469 A.2d 682

COMMONWEALTH of Pennsylvania ex rel. John C. ERMEL

v.

**Romayne B. ERMEL, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1983.

Filed Dec. 30, 1983.

Kenneth C. Marano, Wilkes-Barre, for appellant.

Ettore S. Agolino, Pittston, for appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

ROWLEY, Judge:

This is a direct appeal from an order of contempt entered by the Luzerne County Court of Common Pleas on January 18, 1982. The trial court held Romayne B. Ermel, appellant,

in contempt because of her failure to comply with court orders dated November 27, 1978 and December 18, 1979, that granted John C. Ermel, appellee, visitation with and joint custody rights concerning the parties' minor daughter, Rita Ann Ermel. We affirm.

The matter of custody and visitation rights concerning Rita Ann originated in 1976. At that time Rita Ann was 4 years old. She is now 11, and during the past seven years countless hearings and other proceedings have been held before four different trial judges. The case has been before our court on two previous occasions, resulting in a decision awarding visitation rights to Rita Ann's father,[1] and a subsequent order affirming an award of joint custody to the child's divorced parents.[2] Appellant has twice been held in contempt for failing to abide by the court ordered visitation and custody schedule. Appellant was first held in contempt on December 20, 1978, for failing to comply with the November 27, 1978 court ordered visitation schedule. On September 24, 1979, she was remanded to Luzerne County Women's Detention Center because she failed to purge herself of the contempt. On October 3, 1979, appellant gained her release by posting a $25,000.00 performance bond whereby she guaranteed that she would comply with the court's orders. (October 3, 1979 N.T. 31–32) Nevertheless, appellant did not adhere to the court ordered visitation schedule, nor did she comply with the subsequent order of December 18, 1979, awarding joint custody to both parents. Consequently, appellee filed a petition for attachment on

1. In *Commonwealth ex rel. Ermel v. Ermel,* 259 Pa.Super. 219, 393 A.2d 796 (1978), this court reversed an order of the trial court that denied visitation to Rita Ann's father. The court determined that the presumption of legitimacy had not been rebutted and thus, the trial court erred in finding that John Ermel was not Rita Ann's father. The court held that visitation was to be reinstated, in order to give the father an "opportunity to re-establish and to deepen his relationship with his daughter." *Id.,* 259 Pa.Superior Ct. at 229, 393 A.2d at 801.

2. By per curiam order and memorandum opinion in *Commonwealth ex rel. Ermel v. Ermel,* 297 Pa. 508, 441 A.2d 763 (1982), this court affirmed the trial court's orders denying the mother's petition to discontinue the father's visitation and custody rights, and her petition to modify visitation and custody rights.

October 8, 1981, in order to compel appellant's compliance. After hearings held October 22, 1981, through November 5, 1981, appellant was again held in contempt by order dated January 18, 1982. The court, in its latest contempt order, before us on this appeal, declared that appellant's continued noncompliance rendered the performance bond forfeited for payment of appellee's attorneys fees.

Although appellant's brief frames two questions, her basic contention on appeal is that the evidence was insufficient to support the trial court's adjudication of contempt. Upon a thorough review of the exhaustive hearings and other proceedings in this case, we find that appellant has violated the court ordered visitation and custody schedule, and thus we affirm the trial court's contempt order.

The dominant purpose of civil contempt proceedings is to aid a private litigant by coercing the contemnor into compliance with a court order. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Woods v. Dunlop*, 461 Pa. 35, 334 A.2d 619 (1975); *Nemeth v. Nemeth*, 306 Pa.Super. 47, 451 A.2d 1384 (1982). The general rule in civil contempt cases is that the complaining party "has the burden of proving noncompliance with the court order by a preponderance of the evidence, and that present inability to comply is an affirmative defense to be proved by the contemnor." *In Re Grand Jury*, 251 Pa.Super. 43, 53, 379 A.2d 323, 327 (1977); *Barrett v. Barrett*, 470 Pa. 253, 263, 368 A.2d 616, 621 (1977). In considering an appeal of a contempt order, we must place great reliance on the sound discretion of the trial judge. *In Re Grand Jury, supra* 251 Pa.Super. at 50, 379 A.2d at 326; *Bata v. Central Penn National Bank of Philadelphia*, 433 Pa. 284, 287–88, 249 A.2d 767, 768 (1969).

In the instant case, the court, in its order of November 27, 1978, granted the father visitation on the first and third Saturdays of each month and on the second and fourth Sunday of each month. In its order of December 18, 1979, the court awarded the father additional periods of partial custody on certain annually recognized holidays, for two weeks during the summer months, and expanded the Sun-

day visitation rights into weekend custody from Friday until Sunday. Testimony at the hearings held October 22 through November 5, 1981, reveals that appellant has repeatedly attempted to frustrate, rather than foster, compliance with the court's orders as well as development of a normal father-daughter relationship between Rita Ann and her father. Appellee testified that he encountered difficulty in his attempts to see Rita Ann from January 1980 through May 1980. During that period, the testimony indicates that he was denied visitation at least eight times, purportedly because Rita Ann was sick. (October 22, 1981 N.T. 9–13, November 5, 1981 N.T. 14–25, 71–76) On at least two other occasions during those months, appellee was denied custody because appellant had taken the child on vacation. From August 1, 1981, until the latter part of October 1981, appellee saw his daughter only twice, both times on Saturday afternoons. Specifically, he testified that on September 11, 1981, he went to pick up Rita Ann for a scheduled weekend visit and the child refused to go. (October 22, 1981 N.T. 25) He implored appellant to assist him by talking to the child or helping him get her to the car, but appellant said nothing and looked at the ceiling. (October 22, 1981 N.T. 26) He then left. The next weekend he returned for a Saturday visit. Appellant came to the door and again told him that Rita Ann refused to go with him. (October 22, 1981 N.T. 27) This was the last time he made an attempt to see her prior to filing the petition for attachment that is now the subject of this appeal.

 In this case, it is evident that appellant has not only violated the court's orders by making Rita Ann unavailable on certain scheduled days, but furthermore, she has engaged in a course designed to poison her daughter's mind against her father. After appellant was first held in contempt and placed in a Detention Center, a hearing was held at which she posted a performance bond and promised not to interfere with appellee's visitation rights. At the hearing, held on October 3, 1979, the following exchange tran-

spired between Romayne Ermel and Judge Arthur D. Dalessandro:

> [Dalessandro, J.] Q. There is one great concern that I have. From looking at the record I infer that the child may have deep dislike or possibly hatred for her father. Hate doesn't grow in children normally. It is usually taught to them. You have the burden of straightening out the child to the fact that this is her father and that there will be visitation. As far as I'm concerned, you, as the person who has custody of the young child, are primarily responsible for her attitudes and her feelings. You are primarily responsible to correct those attitudes and feelings for the best interest of the child. Have I made it clear?
>
> [Romayne Ermel] A. Yes.

(N.T. 40). At the close of the hearing, Judge Dalessandro included the following directives in his decision:

> It will be the obligation of Mrs. Ermel to have the child clothed and prepared when Mr. Ermel calls for the child at her residence. Mrs. Ermel is to escort the child to Mr. Ermel's car which is going to be parked in front of Mrs. Ermel's residence. It is expected and understood that there may be some initial problems in the physical transfer of the child. The parents are directed to work toward the goal of having Rita Ann placed in her father's custody for the visitation with a minimum amount of problems....

(N.T. 41–42). The subsequent order of December 18, 1979, issued by Judge Dalessandro granted joint custody to both parents placing an affirmative duty on appellant to instruct the child that she may enjoy a normal life in the company of her father and that appellant will not be offended if the child shows affection for her father or if she accepts gifts from him or from his family. Appellant was further ordered to instruct Rita Ann to respect her father and his family.

Mrs. Ermel has not assured Rita Ann that appellee is her father. (November 5, 1981 N.T. 69) She claims that she

does not remember being instructed to escort her daughter to Mr. Ermel's car, nor does she remember being told that she has the burden of explaining the schedule to Rita Ann and encouraging her to accept Mr. Ermel as her father. (November 5, 1981 N.T. 68–69, 77) She insists that appellee physically and mentally abused Rita Ann, a contention that has no support on the record except for appellant's own testimony. (November 5, 1981 N.T. 80–81) In fact, an allegation that John Ermel physically abused Rita Ann has previously been rejected by this court.[3] In this case, the evidence was more than sufficient to support the trial court's determination that the mother's conduct fell far short of court directives.

■ Indeed, appellant admits that she failed to comply with the court ordered visitation and custody schedule, but she argues that it was impossible for her to perform because Rita Ann had a negative attitude toward her father and she refused to go with him. Impossibility is only a defense, however, where the inability to perform is not due to the defendant's own actions. *D.E.R. v. Pennsylvania Power Co.*, 12 Pa.Commw.Ct. 212, 225, 316 A.2d 96, 103 (1974), *affirmed* 461 Pa. 675, 337 A.2d 823 (1975). In this case, Rita Ann's "negative attitude" toward her father is a direct result of appellant's conduct over the past years. Although the record indicates that the child resisted visitation, it is devoid of any effort on the part of the mother to encourage Rita Ann to spend time with her father, to tell her that he is a good and decent man or to cheerfully escort her to his car and tell her she has nothing to fear. At the hearings held pursuant to these contempt proceedings, a developmental pediatrician and a psychiatrist testified that Rita Ann experiences stress from visits from her father, that she is fearful, and that she becomes depressed before and after visits with her father. They stated that Rita Ann has refused to see him for these reasons. (October 22, 1981

**3.** In *Commonwealth ex rel. Ermel v. Ermel,* 259 Pa.Super. 219, 393 A.2d 796 (1978), the court held that there was not merit to Mrs. Ermel's charge that Mr. Ermel sexually molested Rita Ann. *Id.,* 259 Pa.Superior Ct. at 226, 393 A.2d at 799.

N.T. 69–83, November 2, 1981 N.T. 41–47) Yet, the record demonstrates that Rita Ann's relationship with her father has been impeded by the child's mother in every conceivable manner. Rita Ann has been led to believe that there will be terrible consequences if she begins to enjoy spending time with her father. At the heart of the contempt adjudication in this case is the mother's continued refusal to foster in Rita Ann a sense of admiration and respect for her father.

It is obvious that Mrs. Ermel has a great deal of influence over her daughter's ideas and feelings and she is the only one who can undo the damage that has been done. Therefore, her argument that Rita Ann's refusal to cooperate renders compliance impossible is specious, since appellant alone holds the key to removing that impossibility. It is her affirmative duty to create an atmosphere of love and confidence that will convince Rita Ann that she has nothing to fear from her father who loves her and has proven his devotion by fighting for his right to share in the benefits and burdens of parenthood.

Order affirmed.