## Oldaker v. Oldaker

*Lauson Cashdollar,* for plaintiff.
*Gretchen S. Reed,* for defendant.

KUNSELMAN, *J.,* August 4, 1988 — In addition to his claim for custody, about which we have writ-

ten separately, William P. Oldaker Jr. (the father) has petitioned the court to adjudicate Nancy Louise Oldaker, now Nancy Louise Weissmuller, (the mother) to be in contempt of the existing custody order. The two proceedings were consolidated for hearing. The mother has waived the "five-step, two hearing procedure" because of the distance between her state of residence and Pennsylvania and the travel expense she would incur if she were to return to Pennsylvania for a second hearing.

The order the mother is alleged to have violated was entered by this court on March 19, 1985. It provided for, among other things, an award of partial custody of the parties' two minor children to the father for the bulk of their summer recess from school. The father's contempt petition, filed on June 24, 1986, complains of five different violations of the order. Only two need to be discussed: (1) the mother did not send the children for the 1986 summer partial custody in accordance with the order; and, (2) the mother failed to have the children call the father collect every other Sunday as required by paragraph 5(a) of the order.

## SUMMER 1986 PARTIAL CUSTODY

The father notified the mother by letter dated April 18, 1986, of his intent to exercise his right to summer partial custody of the children. The letter gave the flight scheduled from Phoenix, Arizona on June 19, 1986 together with the departure and arrival dates and times for the return flight to Phoenix as well as other pertinent information. However, the children were not placed on the flight to Pittsburgh on June 19 by the mother.

She said she did not do so on the advice of her attorney in Arizona. She had filed an action in the Maricopa County Arizona Superior Court seeking to

modify this court's order to limit the period of summer partial custody to 30 days. The pleading was verified by her on May 1, 1986, was signed by her lawyer on May 29, 1986 and was presented to that court on June 4, 1986. Her petition alleged that our order was disruptive to the children because they were unable to maintain contacts with their friends during the summer months and denied her the enjoyment of spending Christmas Day with her children. She also alleged resulting psychological problems the children were experiencing. The Arizona court set a hearing date on her petition for July 9, 1986.

In response, the father retained counsel who, on his behalf, filed a petition for writ of habeas corpus. Therein, he sought to have the Arizona court enforce our order by requiring the mother to turn the children over to the father. After hearing, the Arizona court found: (1) Pennsylvania had jurisdiction until this court relinquished jursidiction; (2) the only reason it could refuse to order delivery of the children was upon a finding of endangerment of the children and there was no such evidence; and, (3) the only real reason the mother had to resist the writ was her contention that the children did not want to go with their father.

Consequently, the Arizona court deferred entry of judgment until July 28, 1988 in order to permit the mother to petition this court for emergency relief. The court indicated an intent to order her to turn the children over on that date in the event she failed to do so. She failed to do so and an order was entered by that court on August 14, 1986 directing her to turn the children over to the father. Later, on September 18, 1986, that court also found "that the respondent has unreasonably denied, restricted and interfered with the court-ordered visitation."

She testified that in March 1986, the children began to become aggravated about the upcoming summer partial custody with their father and told her they were not going to go. It is interesting to note that she did not respond to their objections by exerting her parental influence upon the children or encouraging them to go with their father. Instead, she retained an attorney. She said the attorney advised her that there would be no problem with transferring jurisdiction from Pennsylvania to Arizona and no problem in obtaining a modification of our order. We infer that she retained the attorney for those purposes.

She further testifed that: she had no knowledge as to why the filing of her petition to modify was delayed for one month from May 1 when she verified it; she had no knowledge that the filing was deliberately delayed until a time near the date the father was to pick up the children; her Arizona attorney told her to hold the children until the Arizona proceeding was resolved; she and the attorney took it upon themseles to ignore our order until the Arizona court decided; and that she understood that a demonstration of physical danger to the Arizona court would eliminate visitation and she attempted to do so.

The mother clearly violated our order by not sending the children to Pennsylvania for their summer partial custody. Her sole defense to this contempt allegation is her reliance upon the advice of her counsel. She argues that she was justified in relying upon the lawyer's advice that she not send the children to Pennsylvania until after the Arizona hearing. She further argues that the failure to secure a stay of our order was not due to her actions but to an oversight of her attorney.

Counsel for neither party cited a Pennsylvania case on this issue. Counsel for the father cited *Farber v. Rizzo,* 363 F. Supp. 386 (E.D. Pa. 1973) for the proposition that following advice of counsel is no defense. Counsel for the mother cited no case on the question but argues that reliance upon the advice of counsel is closely akin to impossibility of performance — a defense recognized in *Commonwealth ex·rel. Ermel v. Ermel,* 322 Pa. Super. 400, 469 A.2d 682 (1983) where the inability to perform is not due to respondent's own actions.

We decline to follow a federal court decision and we reject the mother's argument of impossibility of performance. This is not a case where the mother was unable to perform. Instead, it is a case where she sought a lawyer to tell her what she wanted to hear, namely, she could avoid the court order by seeking a modification thereof in the Arizona court. Moreover, even if the Arizona court had been willing to exercise jurisdiction, it could not have modified the order earlier than its July 9, 1986 hearing date. Consequently, even if the mother had been successful in persuading the Arizona court to exercise jurisdiction, the Pennsylvania order would still have been in effect on the date the children were to leave for Pennsylvania. It does not require a mind trained in the law to understand that an order of court is effective until otherwise ordered.

Thus, we conclude that the mother was able to comply with the order. The question remains what effect, if any, her reliance upon counsel's advice not to send the children to Pennsylvania until after the Arizona court acted should have on the contempt issue. In *Rau v. Wilden Acres Inc.,* 33 North. 357 (1959), the court said that "[a]dvice of counsel is not a defense but may be considered by the court in determining the punishment were the contemner has

acted in good faith on the advice of his counsel." *Id.* at 362.

We believe the rule in *Rau v. Wilden Acres Inc., supra,* is sound and should be adopted. Where a court enters an order, with jurisdiction over the parties and subject matter, the order is in effect until it is dissolved by that court or reversed on appeal. *City of Pittsburgh v. Brunwasser,* 40 Pa. Commw. 197, 396 A.2d 907 (1979). A party failing to abide by the terms of such an order may be held in contempt even if there is an error or irregularity in the order. *City of Pittsburgh v. Brunwasser, supra.* Thus, by not accepting the defense of "advice of counsel" we will not excuse the mother's failure to comply but will take her reason into account in determining the character and extent of her contemptuous conduct.

In this connection, if we viewed her resort to the Arizona court and her reliance upon counsel's advice in isolation, we would not deem it to be as serious. However, when viewed as part and parcel of the entire history it is but another of many devices utilized by the mother to keep the children away from their father and to frustrate our orders. So viewed, it becomes more serious. We have already granted the father some relief by extending his 1986 summer partial custody period in an order entered in August of that year. We think we should do more.

## FAILURE TO HAVE THE CHILDREN CALL

Under the 1985 order, the mother was to have the children call the father every other Sunday. After two such calls, the children stopped calling. The mother said they didn't want to be bothered calling. Thereafter, the father initiated the calls and, for the most part, was able to talk to his children. It is ap-

parent that many of the conversations were strained and that is not surprising.

It seems to the court that the purpose of the provision in the order has been served. The father was, in fact, able to maintain fairly regular telephone communication with his children. If that purpose has been fulfilled it makes no difference whether he or the children initiated the calls. Therefore, we will not adjudicate the mother in contempt for this reason.

### ORDER

Respondent, Nancy Louise Oldaker, now Nancy Louise Weissmuller, is adjudged in contempt of our order of March 19, 1985 for failing to send the children to Pennsylvania for their 1986 summer partial custody. She is sentenced to serve three months in the Beaver County Jail. That sentence is suspended upon her compliance with the following conditions:

(1) That she acknowledge, in writing, to William P. Oldaker III and Michael N. Oldaker that she is responsible for alienating them from their father, apologize to them for doing so and encourage them to love and respect him.

(2) That she comply with requests of her psychologist and the psychologist counseling with her children which are designed to overcome the alienation of the children from their father and reestablish a proper relationship with him.

(3) That she pay the sum of $935 as a compensatory fine for the use and benefit of William P. Oldaker Jr.