J. S53035/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARILYN PAIK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SUENG PAIK, | : | No. 912 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Order, February 17, 2017,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 2015-14333

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 11, 2017**

Sueng Paik ("Husband") appeals the order of the Court of Common Pleas of Montgomery County that found Husband in contempt of court and directed him to pay $480,018 into escrow and remanded him to the Montgomery County Prison for a term of six months or until the payment was made.  After careful review, we affirm.

The trial court set forth the following relevant procedural and factual history:

> Plaintiff-Wife, Marilyn Paik [("Wife")], commenced this action by filing a Divorce Complaint on June 24, 2015.  The parties are the parents of two (2) children.
>
> The parties executed a Stipulation on November 2, 2016, in which they agreed, ***inter alia***, to deposit $1.1 million into an interest bearing escrow account for the benefit of the parties from

the sale of assets, real estate, goodwill, and a liquor license by business entities controlled by [Husband]. This Stipulation was entered as a Court Order on November 3, 2016.

On January 6, 2017, [Wife] filed an Emergency Petition for Special Relief in which she alleged that [Husband] had violated the Order by, *inter alia*, failing to deposit the entire $1.1 million into an interest-bearing escrow account.

By Order dated January 9, 2017, the undersigned determined that [Wife's] January 6, 2017 filing was not an emergency and scheduled a conference on January 25, 2017. Following a short-list conference on January 25, 2017, we scheduled a hearing on February 2, 2017.

During the February 2, 2017 hearing, the Court determined that [Husband] was in contempt of the November 3, 2016 Order: "Well, I don't think there is any question of doubt that [Husband] is in contempt." "It's clear he's in contempt." The Court directed [Husband] to comply with the November 3, 2016 Order in all respects by February 17, 2017.

On February 17, 2017, the Court conducted a hearing to determine whether [Husband] had made all the required payments mandated by the November 3, 2016 Order. When the Court determined that [Husband] had not paid the $480,018 into the interest-bearing escrow account, the undersigned sentenced [Husband] to imprisonment for a term of six (6) months. A purge payment was set at $480,018 (to be deposited into the escrow account pursuant to the November 3, 2016 Order). Furthermore, the Court stated that [Wife] was entitled to attorney's fees incurred in connection with litigation of her contempt petition. The Court stated that these fees were to be awarded in equitable distribution.

On March 10, 2017, [Husband] filed a Motion for Reconsideration of the Contempt Order entered

on February 17, 2017. On March 15, 2017, [Wife] filed a Response to [Husband's] Motion for Reconsideration.

On March 16, 2017, [Husband] filed the instant appeal. By Order[Footnote 2] dated March 21, 2017, we denied [Husband's] Motion for Reconsideration.

> [Footnote 2]: The Order dated March 21, 2017 need not have been issued as [Husband's] Motion for Reconsideration was deemed denied by operation of law on March 20, 2017.

[Husband] filed an application for stay of the Contempt Order in both the Superior Court and Supreme Court. Those requests were denied by the appellate courts.

FINDINGS OF FACT

At the time the parties entered into the Stipulation on November 2, 2016 and the Court entered its Order on November 3, 2016, the balance of [Husband's] Vanguard money market account was $1,104,478.42

On or about January 4, 2017, [Husband] withdrew $619,982.00 from his Wells Fargo checking account and deposited it into the parties' interest bearing escrow account pursuant to the Stipulation of November 2, 2016 and Court Order of November 3, 2016.

Around the end of December 2016, [Husband] made a balloon payment in the amount of $425,000.00 to Gary Santabarbara relating to [Husband's] purchase of a club from Mr. Santabarbara.

Furthermore, [Husband] spent about $55,000 on payroll for his Las Vegas business as well as living expenses for himself and the parties' children.

Trial court opinion, 5/10/17 at 1-3 (citations and footnote omitted).

On appeal, Husband raises the following issue for this court's review:

> Whether the [trial] court abused its discretion in imprisoning [Husband] for a period of six (6) months, with the only purge condition being a payment of $480,018, when [Husband] testified of his present inability to make the purge payment and when, as evidenced by the [trial] court's own statements on the record, there was insufficient evidence presented to permit the [trial] court to make a determination that [Husband] did have a present ability to make the purge payment?

Husband's brief at 4.

This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. ***Bold v. Bold***, 939 A.2d 892, 894-895 (Pa.Super. 2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." ***Gates v. Gates***, 967 A.2d 1024, 1028 (Pa.Super. 2009).

Here, Husband does not deny that he is in contempt of the order to place approximately $1.1 million in escrow as he admits he did not place the full amount in escrow. However, he argues that the trial court abused its discretion when it imposed the purge condition when sufficient evidence indicated that he lacked the ability to pay.

It is true that the trial court must give the party in contempt the opportunity to purge the contempt by fulfilling a condition. *McMahon v. McMahon*, 706 A.2d 350, 358 (Pa.Super. 1998). The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. *Commonwealth ex rel. Ermel v. Ermel*, 469 A.2d 682, 683 (Pa.Super. 1983). The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party. *Commonwealth Dept. of Envtl. Resources v. Pennsylvania Power Co.*, 316 A.2d 96, 103 (Pa.Cmwlth. 1974).

Here, Husband argues that he presented evidence of his inability to pay $480,018 into the escrow account because the vast majority of the $480,018 that he did not previously deposit into the escrow account was used to make the balloon payment to Mr. Santabarbara for the purchase of a club. Husband argues that the $425,000 paid to Mr. Santabarbara represented a legitimate business debt and that the trial court did not have the slightest idea whether or not Husband had any means of obtaining the funds necessary to make the purge payment. As a result, Husband asserts that the trial court clearly committed an abuse of discretion when it imposed the purge condition without knowing whether Husband had the ability to meet the purge condition of payment of $480,018.

Husband misunderstands a key point. It was his burden to establish that he lacked the ability to pay the purge amount. It was not the trial

court's duty to divine his financial status. Based on the testimony presented by both Husband and Wife, it was clear that Husband, in the past and possibly to this day, had great financial resources. Husband testified on cross-examination regarding his mortgage expense, automobile expenses, and real estate taxes. (Notes of testimony, 2/2/17 at 31-32, 39-40.) He also testified that he and his brother just purchased a building and signed a note for $800,000. (*Id.* at 21.) Wife testified that Husband never had any trouble getting money, that he took luxurious vacations, and purchased businesses when he desired. (*Id.* at 45a.) Wife recounted that Husband once drove to Las Vegas with $2,000,000 in cash to purchase a strip club there. (*Id.*)

Given the testimony of such large expenditures and Husband's lack of evidence that he could not make the payment, only that he used the money he originally planned to place in escrow to make a balloon payment to Mr. Santabarbara, the trial court did not abuse its discretion when it found Husband guilty of contempt and that he failed to meet the purge condition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017