J-A16003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER L. JACOBY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD G. JACOBY, JR. | : | |
| | : | |
| Appellant | : | No. 1379 MDA 2020 |

Appeal from the Order Entered October 1, 2020,
in the Court of Common Pleas of Berks County,
Civil Division at No(s): 16-16933.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED NOVEMBER 09, 2021**

Appellant Richard G. Jacoby, Jr. (Father) appeals the order of the Berks

County Court of Common Pleas, which held him in contempt and awarded

counsel fees to Appellee Heather L. Jacoby (Mother), pursuant to the Child

Custody Act. **See** 23 Pa.C.S.A. § 5323(g)(1)(v). The order expressed the

court's partial adjudication of Mother's wide-ranging omnibus petition.[1]

Among the six counts contained in her petition, several alleged violations of

---

[*] Former Justice specially assigned to the Superior Court.

[1] The petition was captioned, "[Mother's] Petition to Enforce Court Order Dated November 27, 2019; Petition for Indirect Civil Contempt of the Order Dated December 13, 2019; Petition for Indirect and Direct Civil Contempt of the Court Order Dated December 16, 2019; Petition for Indirect Civil Contempt of the Order Dated October 22, 2018; Petition for Indirect Civil Contempt of the Final Custody Order Dated May 9, 2017 and Petitions for Sanctions pursuant to 23 Pa.C.S.A. § 5339."

the parties' various custody orders involving their 12-year-old daughter, A.C.J. (Child). This matter only concerns Count IV and Count V of that petition.[2] Under Count IV and Count V, the court held Father in indirect civil contempt for his refusal to facilitate telephone contact between Mother and Child and for his unilateral decision to retain a therapist for Child without Mother's consent. For these violations, the trial court sanctioned Father by awarding Mother counsel fees in the amount of $3,897.58. Father appealed. After review, we affirm.

The record discloses a convoluted procedural history spanning several appeals. The pertinent background may be abbreviated as follows: Child was born in 2008, and the parties divorced in 2013. In its custody order of May 9, 2017, the trial court awarded Father primary physical custody. Mother's partial physical custody was limited to only what the parties could agree, although Mother was entitled to certain custodial time during the holidays.

---

[2] The trial court only addressed Count IV and Count V, because the court concluded it lacked jurisdiction to hear the other four counts. The remaining four counts implicated another aspect of the parties' custody dispute, which was still awaiting final appellate resolution. *See H.L.J. v. R.G.J., Jr.*, 239 A.3d 107 (Table), 2020 WL 4334055 (Pa. Super. July 28, 2020) (non-precedential decision), *appeal denied* 239 A.3d 1086 (Pa. September 28, 2020).

After the appellate litigation ended, the trial court then held an additional hearing on Counts I, II, III, and VI of Mother's petition. The court similarly found Father in contempt. *See* Order of Court, 11/20/20. Father then refused to comply with the November 20, 2020 order, and so the court issued an another contempt order. *See* Order of Court, 12/16/20. Father has also appealed those orders; we have consolidated those appeals and separately listed them before this panel. *See* 100 MDA 2021 and 131 MDA 2021.

This case concerns two aspects of their custody arrangement, the provisions regarding telephone contact and the provisions outlining their shared legal custody rights. The May 2017 custody order obligated the custodial parent to ensure Child returned any missed calls from the non-custodial parent. Later, on October 22, 2018, the trial court issued an order clarifying the telephone provision: "[Father] shall provide the child's telephone number to [Mother,] and [Mother] may have reasonable telephone contact with the child between the hours of 7 and 8 p.m. on Monday, Wednesday, and Friday, or otherwise for compelling reasons."

The May 2017 order also awarded the parties shared legal custody. The court explicitly outlined the shared legal custody rights *via* detailed appendices to the custody order. Per Appendix C, Mother was entitled to full participation in Child's medical decisions. An underlying issue throughout the custody litigation was the need for reunification therapy between Mother and Child. The court also ordered the therapy to begin immediately. Dr. Adrian Quinn was the initial therapist.

Ultimately, the reunification therapy did not take. Dr. Quinn concluded: that the typical reunification therapy was ineffective; that the Child experienced anxiety to the point where she no longer wanted to meet with Mother; and that Child's rejection of Mother was influenced by Father. Dr. Quinn recommended an intensive reunification therapy with Linda Gottlieb, a

therapist in New York.[3]  Mother then petitioned the trial court to modify the custody order so she could attend intensive reunification program with Gottlieb.  The court determined Child suffered from moderate to severe alienation from Mother, and so the court granted Mother's request by its order of November 27, 2019.[4]

Meanwhile, the litigation over therapy had adversely affected Child's attitude toward Mother.  Originally, Child told Mother about her day and that she loved her.  But after Dr. Quinn had testified Father had severely alienated Child, Mother said Child's tone devolved.  Child would either hang up on Mother or verbally accost her.  Child told Mother that Mother only gave birth and then left, and that her step-mother was her real mother-figure.  In another instance, Child also told Mother she was a "worthless pigeon," a "diseased animal."  **See** Trial Court Opinion (T.C.O.), 1/29/21, at 4-7.  Mother emailed Father to ask his help facilitating the calls, but Father refused.  Mother also discovered Child had been seeing a different therapist without her

_____

[3] This intensive reunification therapy called for a maximum 90-day, no-contact period, whereby Father would be forbidden from exercising his custody rights to allow Mother and Child to repair their relationship.  Although, if Father encouraged the reunification, then the no-contact period could be reduced significantly.

[4] Father appealed that decision.  **See H.L.J. v. R.G.J., Jr.**, 239 A.3d 107 (Table), 2020 WL 4334055 (Pa. Super. July 28, 2020) (non-precedential decision), *appeal denied* 239 A.3d 1086 (Pa. September 28, 2020).  **See also** Footnote 2, **supra**.

knowledge, even though the parties were litigating this very issue. Ultimately, Mother filed the instant six-count petition in August 2020.

As noted above, the trial court declined to adjudicate most of these counts until the resolution of Father's prior appeal. However, the parties agreed the trial court had jurisdiction to hear Count IV and Count V. Mother alleged in Count IV of the petition Father violated the telephone provision of the October 22, 2018 order for his failure to ensure Child and Mother had reasonable contact. She alleged in Count V that Father violated the legal custody provisions of the May 9, 2017 order when he unilaterally chose a therapist for Child. The trial court held a hearing on September 10, 2020. By order of September 29, 2020 (docketed October 1, 2020), the trial court granted Mother's relief:

- Count IV of "[Mother's] Petition seeking sanctions for [Father's] civil contempt of this court's order of October 22, 2018 to allow for reasonable telephone contact is granted as, among other things, [Father] made no sincere effort to cause the minor child to speak with [Mother] in a civil and respectful manner or for a sufficient period of time within which to allowed for meaningful communication;

- Count V of [Mother's] Petition seeking sanctions for Father's civil contempt of the Final custody Order of May 9, 2017 for unilaterally selecting a therapist to counsel the child is granted due to [Father's] failure to comply with the directives set forth in the Appendix to said Custody Order at paragraphs 1A, 1B, 1C, 3, and the provisions of Appendix C.

  Accordingly, [Father] shall remit the amount of $3,897.58 by check in the name of Mother's counsel…within fifteen days of this Order.

*See* Order of Court, dated September 29, 2020, at ¶¶4-5.

Father timely filed this appeal, wherein he presents the following issues

for our review:

1. May a trial court grant a petition for contempt that fails to conform to the requirements of Pa.R.C.P. 1915.3-2?

2. Must a court tie a sanctions monetary figure to a reasoning?

3. For civil contempt, must a trial court apply the beyond a reasonable doubt standard to determine a respondent's present ability to comply with the order before issuing a finding of contempt?

4. May a trial court form a proper factual basis to tie [remedies] / sanctions for civil contempt without following proper contempt procedure?

Father's Brief at 6-7.

Our standard of review concerning a trial court's contempt findings is

well-established:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

***B.A.W. v. T.L.W.***, 230 A.3d 403, 406 (Pa. Super. 2020) (citation omitted).

To the extent Father raises purely legal questions, we observe the

applicable standard of review is *de novo*, and our scope of review is plenary.

***See, e.g., Commonwealth v. McMullen***, 961 A.2d 842, 846 (Pa. 2008)

(citation omitted).

In Father's first appellate issue, he alleges the trial court erred by ignoring Mother's noncompliance of the Rules of Procedure governing Domestic Relations. When Mother petitioned the court for contempt, she was obligated to file and serve "a certification regarding any criminal record or abuse history," under Pa.R.C.P. 1915.3-2(a). **See also** Father's Brief at 12. Although Mother had previously filed this certification over the course of the litigation, she failed to submit the updated form with the instant petition. While this was a mistake, we conclude Father merits no relief.

Father did not object to Mother's noncompliance with Rule 1915.3-2(a) at any point during the proceedings below. Father raises this issue for the first time on appeal, which constitutes a clear violation of our Rule of Appellate Procedure 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). We have explained:

> Failure to timely object to a basic and fundamental error…will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The [principal] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error.

**M.O. v. J.T.R.**, 85 A.3d 1058, 1061 (Pa. Super. 2014) (citing **Fillmore v. Hill**, 665 A.2d 514, 516 (Pa. Super. 1995)) (internal citations omitted). Thus, because Father did not preserve this issue for our review, his first issue is waived.

In his second appellate issue, Father argues the trial court failed to abide by 23 Pa.C.S.A. § 5323(g)(1), which governs the five allowable sentences a court may impose following a party's contempt of a custody order. This section of the Custody Act provides:

> **(g) Contempt for noncompliance with any custody order**.—
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
>> (i) Imprisonment for a period of not more than six months.
>>
>> **(ii) A fine of not more than $500.**
>>
>> (iii) Probation for a period of not more than six months.
>>
>> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>>
>> **(v) Counsel fees and costs.**

23 Pa.C.S.A. § 5323(g)(1)(i)-(v) (emphasis added).

Here, the trial court held Father in contempt for two violations and granted Mother's request for sanctions by ordering him to remit a check, "in the name of Mother's counsel," for $3,897.58. **See, supra,** Order of Court, dated September 29, 2020, at ¶¶ 4-5.

In claiming the trial court's sanction was erroneous, Father presents a legal question predicated upon a dubious semantics argument. He reasons the award ($3,897.58) constituted a "sanction," per the precise terms of the

- 8 -

order. *See id.* But he somehow argues that the "sanction" cannot be considered "counsel fees and costs" under Section 5323(g)(1)(v), notwithstanding order's mandate that he "remit the amount of $3,897.58 by check in the name of Mother's counsel." *See id.* Thus, he reasons the award can only be considered a "fine" under Section 5323(g)(1)(ii). And because the sum of the sanction significantly exceeded the maximum fine of $500, Father concludes the entire award must be quashed. *See* Father's Brief at 12-13. In the alternative, Father suggests we remand for a proper calculation of counsel fees. *Id.* at 13.

Father's argument is too clever by half. First of all, the 2010 Comment to Section 5323(g)(1)(v) references the award of "counsel fees and costs" as an "explicit sanction." So if Father means to advance a linguistic distinction between the "sanction" and "counsel fees," the distinction is imaginary. Second, the sanction unambiguously compensated Mother for the counsel fees and costs she incurred to bring the instant action, as evidenced by the order's clear language telling him to send the check to Mother's attorney. We find it extremely disingenuous of Father to emphasize the "sanctions" language in the court's order, while ignoring the language directing him to "remit…a check in the name of Mother's counsel."

As to Father's alternative argument, that the record does not sufficiently reveal the court's logic, we disagree. The record sufficiently divulges the court's calculations. The trial court heard argument and averments from Mother's counsel, and reviewed the properly admitted invoice. *See* N.T.,

- 9 -

9/10/20, at 49-52. In its Pa.R.A.P. 1925(a) opinion, the court stated: "The factual basis on which we computed the damages amount was based upon Mother's Counsel's itemized invoice he presented in court that reflected his fees for preparation of the contempt petition heard on September 10, 2020." **See** Trial Court Opinion (T.C.O.), 1/29/21, at 12; **see also** Mother's Exhibit 5. No remand for a proper calculation is necessary. Father's second appellate issue is entirely devoid of merit.

Father's third appellate issue concerns the trial court's decision to hold him in contempt for his failure to facilitate the telephone calls between Mother and Child – Count IV of Mother's petition. During the hearing, Father asserted an affirmative defense – namely, that he was unable to comply with the telephone provision of the custody order, because he could not force Child to speak to Mother. Father argues the trial court applied the wrong legal standard to rule on his affirmative defense. According to Father, the court's specific legal error was its failure to determine whether Father had the ability to comply with the custody order **beyond a reasonable doubt. See** Father's Brief at 14 (emphasis original).

To identify the governing case law, we must identify the type of contempt at issue. All acknowledge the trial court held Father in indirect civil contempt. The parties further acknowledge the court's civil contempt sentence (here, counsel fees) was designed to be a **coercive** sentence (meant to coerce Father's compliance), as opposed to a **punitive** sentence (meant to

punish Father for his violations). *See id*., at 13, 15. Thus, all agree the following principles apply:

"To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order…which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 n.7 (Pa. Super. 2012) (citation omitted). Furthermore:

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citing *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009-10 (Pa. Super. 1995)).

However, the alleged contemnor may assert an affirmative defense to excuse the apparent violation. *Sinaiko*, 664 A.2d at 1009. To explain:

> [A] showing of non-compliance is not sufficient in itself to prove contempt. If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court [o]rder, contempt is not proven. The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court [o]rder.

*B.A.W.* 230 A.3d at 407 (emphasis original) (citation omitted).

These principles are not in dispute. The sticking point is how they are applied. We have explained the sentence for indirect civil contempt must be

- 11 -

coercive, meaning the contemnor must be able to perform the condition to purge the contempt. To ensure the sentence is appropriately coercive, we have attached a heightened standard:

> A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. To impose civil contempt the trial court must be convinced **beyond a reasonable doubt** from the totality of evidence presented that the contemnor has the present ability to comply with the [o]rder.

**Id.** (emphasis added) (citation omitted); **see also Garr**, 773 A.2d at 189.

Instantly, Father construes these principles to mean the trial court erred, because it did not utilize the heightened "beyond a reasonable doubt" standard to adjudicate his affirmative defense. Put another way, Father believes the court necessarily had to determine, beyond a reasonable doubt, that he had the present ability to comply with the **custody order** – *i.e.*, the underlying order he violated, landing him in contempt. **See generally** Father's Brief at 13-16. This is incorrect.

Essentially, Father has conflated the standard governing affirmative defenses with the standard governing civil contempt sanctions. Both concepts are contingent upon the individual's ability to comply with "the order." But "the order" in question changes depending on the concept. Regarding affirmative defenses, when we held the alleged contemnor must have the ability to comply with "the order," we refer to the underlying order which the alleged contemnor had violated. **See B.A.W.**, **supra.** Regarding civil contempt sentences, when we held the contemnor must have the ability to

comply with the "the order," we refer to the contempt order, imposing the sentence. **See id.** The law only requires the heightened "beyond a reasonable doubt" standard for civil contempt sentences, (*i.e.*, the ability to perform the purge condition). The heightened standard does not attach to affirmative defenses to the underlying order.

Civil contempt sentences require the heightened "beyond a reasonable doubt" standard for a simple reason. For a civil contempt sentence to be proper, it must be coercive – *i.e.*, it must be feasible for the contemnor to perform it. Otherwise, the sentence would metastasize from a properly coercive sentence to an improperly punitive sentence. Therefore, the law requires the trial court determine, beyond a reasonable doubt, that the contemnor has the ability to comply. **See Wetzel v. Suchanek**, 541 A.2d 761, 763 (Pa. Super. 1988).

In **Wetzel**, the trial court found the father was in indirect civil contempt for his nonpayment of child support; the trial court determined the father "thumbed his nose" at judicial process, even going so far as to deceive the domestic relations office. The trial court imposed sanctions, including a 60-day term of incarceration. **Wetzel**, 541 A.2d at 763. And to purge himself of the contempt sentence (get out of jail), father first had to secure full-time employment. On appeal, the father alleged his civil contempt sentence was erroneously punitive. We agreed.

We explained "[c]ivil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor

the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public." *Id.* Importantly, "that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive." *Id.* The difference is vital. "Even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedural rights, and the two may not be casually commingled." *Id.* (citing ***Barrett v. Barrett***, 368 A.2d 616 (Pa. 1977)).

Therefore, in ***Wetzel*** we concluded it was highly unlikely the father could find full-time employment while he sat in jail. Thus, trial court erred because it did not first determine, beyond a reasonable doubt, from the totality of the evidence before it, that the father had the present ability comply with the contempt order's purge condition. *Id.* at 764. We remanded for a more appropriately coercive condition in line with the father's civil contempt.

Returning to the instant matter, we conclude the trial court applied the correct legal standards. First, Mother had to prove, by a preponderance of the evidence, that Father violated the October 22, 2018 custody order when he did not facilitate telephone contact between Mother and Child. Father advanced an affirmative defense; he claimed lacked the ability to comply with the telephone provision of the custody order. Father alone bore this burden. Not Mother, and not the trial court. Ultimately, the trial court was unpersuaded by Father's affirmative defense:

> The contents of the emails [wherein Mother asked Father to encourage Child to answer her calls] made it perfectly clear that Father was continuing to further alienate the Child from Mother, as he has done for years. … This [c]ourt also found that Father made no sincere effort to cause the minor Child to speak with Mother in a civil and respectful manner or for a sufficient period of time within which to allow for meaningful communication.

T.C.O. at 6 (citations to the record omitted).

The trial court then sanctioned Father for his indirect civil contempt – here, counsel fees and costs amounting to $3,897.58. This sentence was designed to coerce Father's compliance with the custody provision. For the sentence to be properly coercive, the trial court had to ensure, beyond a reasonable doubt, that Father had the present ability to comply; *i.e.*, pay the fees and costs. Given Father's misconstruction of our precedents, he does not actually challenge the court's determination that Mother met her burden, nor does Father claim that the court's sentence was improperly punitive. Therefore, our discussion of this third appellate issue can end here.

Even if Father preserved his larger point – that he could not abide by the custody order, because he could not force Child to speak to Mother – he would still merit no relief. We recognize parents are not always able to abide by custody orders when a parent's compliance with the order necessarily depends upon the child's compliance with the parent. Simply put, there are limits to what a parent can make a teenager do. *See E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) ("It has been said that an older teenage child is like an elephant – she sleeps wherever she wants."). The so-called "Elephant

Rule" may be a valid excuse, or it may be an evasion. The trial court knows best, as it sits as the factfinder and assess witness credibility first-hand. The trial court is not without guidance to make this determination.

We reiterate that an alleged contemnor's affirmative defense is unavailable where there has been no good faith effort to comply with the underlying order. *See B.A.W.*, 230 A.3d at 407. Similarly, we have held: "Impossibility is only a defense…where the inability to perform is not due to the defendant's own actions." *Com. ex rel. Ermel v. Ermel*, 469 A.2d 682, 685 (Pa. Super. 1983) (concluding the mother was in contempt of the custody order, because the child's refusal to visit her father was due to the mother's poisoning of the child's mind).

Here, the trial court determined Father had the ability to facilitate the telephone calls between Mother and their 12-year-old Child. But to the extent Child refused, the court determined further that Child's refusal was caused by Father's continued alienation of Mother. Based on these findings, Father's defense would have been unconvincing in either event: Father did not make a good faith effort to comply with the order; and insofar as he was truly unable to comply, the same was a direct result of his own alienating actions. Thus, even if we were to review the merits of Father's affirmative defense, we would conclude Father was not entitled to relief.

Father's final appellate issue concerns the trial court's decision to hold him in contempt for unilaterally choosing Child's therapist – Count V of Mother's petition. While Father concedes he took Child to therapy without

Mother's approval, he reasons Mother eventually acquiesced to his decision because she did not object for over a year. ***See*** Father's Brief at 16-17. In other words, Father claims Mother's acquiescence constituted her consent, notwithstanding that the Child's need for therapy – and the choice of therapist – was a centerpiece of both the May 2017 custody order as well as the extensive litigation that followed. Ultimately, we do not reach the merits of this question.

In the argument section of his Brief, which consists of only one paragraph, Father has not cited a single legal authority. His failure to do so is a circumvention of Rules of Appellate Procedure:

**Rule 2119. Argument**

**(a)** **General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

Additionally, Rule 2101 makes clear:

**Rule 2101. Conformance with Requirements**

Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101.

"The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (citation omitted). "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." *Whitley*, 50 A.3d at 209 (citation omitted). "Failure to cite relevant legal authority constitutes waiver of the claim on appeal." *Id.* 209-10 (citation omitted). Here, Father's failure in this respect waives the issue for purposes of review. *See* Pa.R.A.P. 2101; 2119(a).

In conclusion: Father waived his first appellate issue for failing to object to Mother's noncompliance with Pa.R.C.P. 1915.3-2(a) during the proceedings below. *See* Pa.R.A.P. 302(a). Second, the trial court did not err when it sanctioned Father's contempt by awarding Mother's counsel fees and costs, pursuant to 23 Pa.C.S.A. § 5323(g)(1)(v). Third, the trial court did not err when it declined to adjudicate Father's affirmative defense by a heightened "beyond a reasonable doubt" standard. And finally, Father waived his fourth appellate issue for failing to abide by our briefing rules. *See* Pa.R.A.P. 2101; 2119(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/09/2021