522 A.2d 80

Gregory L. SUTLIFF

v.

Carlene S. SUTLIFF, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 2, 1986.

Filed March 4, 1987.

Ronald Katzman, Harrisburg, for appellant.

Bonnie D. Menaker, Harrisburg, for appellee.

Before WICKERSHAM, ROWLEY and TAMILIA, JJ.

TAMILIA, Judge:

This is a direct appeal of an Order of contempt entered against appellant/mother for failing to comply with a partial custody Order which was last amended on April 3, 1984. Appellant was fined $250.00.

This appeal involves the youngest child of the now divorced parties, Laura Sutliff, born February 10, 1973, who is currently a seventh grade student residing with her mother, the appellant. Appellee/father resides in the same borough as his daughter and appellant, approximately one mile from appellant's home. While the parties have four children from their marriage, the present appeal only concerns the partial custody rights with respect to Laura.

The original partial custody Order was entered by Judge Sheely,[1] on February 25, 1982, and with respect to Laura ordered: [2]

1. Judge SHEELY has presided over all custody matters between the parties as well as every other issue arising out of their divorce proceedings.

2. An appeal from this Order was filed by appellant but was later withdrawn and discontinued by appellant.

3. Petitioner [/father] shall have visitation with Laurie every Thursday evening from 5:30 p.m. to 8:00 p.m., commencing March 4, 1982, and on alternating Saturdays from 12:00 p.m. noon until 6:00 p.m., commencing Saturday March 6, 1982. Petitioner shall pick up Laurie at her home and return her after visitation.

Respondent [/mother] shall have the children ready and prepared to make the visits on the times indicated above....

Subsequently, on April 2, 1982, appellee filed a petition for contempt relative to the partial custody Order. During a collateral hearing between the parties, Judge Sheely entered on April 12, 1982 an Order which modified the prior visitation Order, dated February 25, 1982, "based on the stipulation of counsel presented at this time." With respect to Laura that stipulation provided:

3. The Order relative to Laurie, Paragraph 3 of the original Order [dated February 25, 1982], shall continue as set forth and the Court to *encourage* both Laurie and her mother to continue the visits, and in the event that some occasion does come up which requires a change in the date or time of the visit, that Mr. Sutliff be given advance notice and be permitted to change the date or time and to have a substitute visit. (Emphasis added).

A contempt hearing was held on January 27, 1983 without result. In furtherance of appellee's April 2, 1982 petition for contempt, appellee filed a petition for determination of petition for contempt, enforcement, and expanded visitation privileges on April 4, 1983, which was dismissed, after hearing, by Order dated April 3, 1984. This April 3, 1984 Order amended the previous Order entered by stipulation of the parties dated April 12, 1982. With respect to Laura, the amending Order reads as follows:

Paragraph three is amended to read that the petitioner and natural father shall have partial custody of Laurie on

alternating Saturdays from 1:00 p.m. to 7:00 p.m., commencing Saturday, April 7, 1984. The petitioner shall also have partial custody every Tuesday evening, from 5:30 p.m. to 8:00 p.m., commencing Tuesday, April 10, 1984. Or if Tuesday does not suit both parties, then on Wednesday evenings at the same times.

. . . .

This order has been entered after talking in chambers with Laurie with counsel present for both parties. No testimony by the parents has been taken in connection with this order, as the court does not feel that additional testimony from the parents at this time would be required.

Appellee's third petition for contempt and enforcement Order and a modification of custody was filed on or about November 15, 1985.[3] It is from the April 4, 1986 contempt Order rendered in response to this petition that appellant now appeals. In his April 4, 1986 Order, Judge Sheely found as a fact that appellant/mother had "not encouraged" Laura to visit with her father and that appellant left it up to Laura whether Laura would make any visits with her father. Based upon these findings the lower court adjudged appellant in contempt, fining her $250.00, and reinstated the prior custody Order of April 3, 1984 in its entirety.

Appellant correctly argues that the trial judge improperly prevented cross-examination of Laura during the April 4, 1986 hearing. With regard to custody and visitation actions, Pa.R.C.P. 1915.11(b) provides:

> The court may interrogate a child, whether or not the subject of the action, in open court or in chambers. The interrogation shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. *The attorneys shall have the right to interrogate the child*

3. The official docket entry shows that the petition was filed, but groups the petition with the Order Scheduling Hearing on the petition, which Order was filed December 11, 1984.

*under the supervision of the court.* The interrogation shall be part of the record. (Emphasis added).

As noted in the 1981 Explanatory Note to Pa.R.C.P. 1915.-11, in *Gerald G. v. Theresa G.*, 284 Pa.Super. 498, 426 A.2d 157 (1981), we have prescribed the procedure for the interrogation of children who are the subject of a custody action. "[W]hen a hearing judge interviews a child in a custody case, certain procedures must generally be met: (1) counsel must be present; (2) counsel must have the opportunity to question the child; and (3) the testimony must be transcribed and made a part of the record." *Id.*, 284 Pa.Superior Ct. at 505, 426 A.2d at 161; *see Nemeth v. Nemeth,* 289 Pa.Super. 334, 433 A.2d 94 (1981).

█ Here, Judge Sheely correctly allowed counsel for both parties to be present during his examination of Laura, which was transcribed and is a part of the record, as well as the parties themselves. (H.T., 4/4/86, p. 74). However, after finishing his examination, Judge Sheely refused to allow counsel for appellant to question Laura, even after appellant's counsel's request to do so:

[THE COURT:] What did your mother tell you?

[LAURA:] She says I can do what I want to do?

[THE COURT:] That's enough. You may step down. Go on out.

MR. KATZMAN: Your Honor, I have additional questions to ask.

THE COURT: You're not going to ask her any questions. I'm going to reinstate this order. Next time she doesn't visit, you're going to jail.

(H.T., 4/4/86, p. 77). The procedure conducted by the hearing court clearly infringed upon appellant's counsel's right to interrogate Laura and failed to develop a complete record for appellate review. Therefore, based on this finding, we vacate the April 4, 1986 contempt Order and remand for further proceedings in accordance with this ruling.[4]

---

4. We note, however, that the hearing judge did hold extensive hearings before the original custody Order and in response to appellee's first petition for contempt. Additionally, the hearing judge spoke to

While it would be improper for us to address appellant's arguments concerning the lower court's abuse of discretion in weighing the circumstances surrounding the visitation, we find that appellant has raised a number of other issues which can be addressed at this time.

■ Appellant argues that because the lower court's Order failed to provide any possibility or opportunity of appellant purging the contempt, the lower court's action must be defined as "indirect criminal contempt," rather than "civil contempt." We disagree. The controlling factor of whether the contempt is civil or criminal in nature is the dominant purpose and objective of the court's Order. Simply stated:

If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained. (Emphasis omitted).

*Brocker v. Brocker*, 429 Pa. 513, 522, 241 A.2d 336, 340 (1968), *cert. den.*, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969); *Bruzzi v. Bruzzi*, 332 Pa.Super. 346, 481 A.2d 648 (1984). Here, the contempt Order's purpose is to protect the best interest of the child Laura and benefit the

Laura in chambers, on the record, and with cross-examination by counsel for both parties on April 3, 1984, before amending the original custody Order for the second time. Finally, in response to appellee's third petition for contempt, the April 4, 1986 hearing was extensive, involving testimony by both parties, appellee's present wife, and Laura before rendering the present contempt Order now on appeal. After thorough review of the transcripts of these proceedings, we find that the only deficiency in the record for appellate review is the preclusion of cross-examination of Laura during the April 4, 1986 hearing.

appellee, not to vindicate the authority of the court, and is therefore civil in nature.

Alternatively, appellant claims that if viewed as civil contempt, the lower court is "clearly wrong" because it did not include the required condition whereby appellant could purge herself. While such a condition is a traditional descriptive feature of civil contempt, *Bruzzi, supra,* we hold that under 23 Pa.C.S.A. § 4346 when imposing a contempt fine for noncompliance with visitation or partial custody the Order need not specify a condition which, when fulfilled would result in the purging of the contempt.[5]

As noted earlier, the basis for the contempt Order was the lower court's finding that appellant/mother had "not encouraged" Laura to visit with her father and that appellant left it up to Laura whether Laura would make any visits with her father. Appellant argues that because neither the original custody Order nor the subsequent amending Orders state that the appellant must "encourage" her daughter to visit with her father, appellant has not violated a court Order in failing to so encourage. We cannot review the lower court's determination of a lack of encouragement on the part of appellant without a complete record, for which we have remanded for further proceedings, however, we will address appellant's argument that a party can only be held in contempt if the Order he is held to have violated clearly and precisely defines the required behavior, which

5. Section 4346 was in full effect at the time of the April 4, 1986 hearing and Order in question, and reads in full as follows:

§ 4346. Contempt for noncompliance with visitation or partial custody order

(a) General rule.—A party who willfully fails to comply with any visitation or partial custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punished by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $500.

(3) Probation for a period not to exceed six months.

(b) Condition for release.—An order committing a person to jail under this section shall specify the condition which, when fulfilled, will result in the release of the obligor.

1985, Oct. 30, P.L. 264, No. 66, § 1, effective in 90 days.

*See also* Pa.R.C.P. 1915.12(d) and comment thereto.

behavior in this case refers to a duty of appellant to "encourage" Laura to visit with her father in accordance with the custody Orders.

In *Fenstamaker v. Fenstamaker*, 337 Pa.Super. 410, 416, 487 A.2d 11, 14 (1985), we set forth the four elements necessary to support a finding of contempt under 42 Pa.C. S.A. § 4132(2):

1. The order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited.

2. The contemnor must have had notice of the specific order or decree;

3. The act constituting the violation must have been volitional; and

4. The contemnor must have acted with wrongful intent.

*See also Weingrad v. Lippy*, 300 Pa.Super. 76, 79, 445 A.2d 1306, 1308 (1982).[6] None of the custody Orders in this case specifically or clearly state that appellant must "encourage" her daughter to visit.[7] The original custody Order of February 25, 1982 mandated that appellant "shall have the children ready and prepared to make the visits on the times indicated" in the Order. But a requirement of "ready and prepared" is far different from a requirement of "encourage", which appellant was found in contempt for failing to do. We understand the lower court's belief that visitation must be forced in this case less future efforts by appellee to visit and develop a relationship with Laura be thwarted, (Slip Op. at 3), but we cannot ignore the basic elements to support a finding of contempt. Thus, based on the existing

6. Interpreting § 4131 renumbered as § 4132 and amended Dec. 20, 1982, P.L. 1409, No. 326, Art. II, § 201 eff. in 60 days.

7. Appellee points to the word "encourage" appearing in the parties stipulation—incorporated by reference in the April 12, 1982 modifying Order—as proof that the appellant's argument is specious and that the court had in fact ordered appellant to "encourage" her daughter to visit with her father. However, as used in the stipulation the word "encourage" was in reference to the lower court's encouraging Laura and appellant to continue the visits, not the court's ordering appellant to encourage Laura to visit.

custody orders on record in this case, we hold that appellant/mother cannot be held in contempt for failing to encourage Laura to visit with her father.

We feel the lower court's actions in *Mellott v. Mellott*, 328 Pa.Super. 200, 476 A.2d 961 (1984) are particularly instructive and applicable to the present case. In *Mellott*, the lower court acknowledged that the mother was not complying with its original custody Order by amending that Order to state, in part:

> It shall be the obligation of the mother to have the children ready for such visits and to *encourage* them to participate in the plan hereby ordered. While in the presence of the children neither of the parents shall make any remarks or do anything which can in any way be construed as derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one whom the children should respect and love. (Emphasis added)

*Id.*, 328 Pa.Superior Ct. at 202, 476 A.2d at 962. We found this amendment to be proper use of the lower court's discretion. This type of language allows for a requirement of encouragement which is definite, clear and specific, and leaves no doubt in the mind of the person to whom it was addressed of the conduct prohibited.

Accordingly, for the reasons stated above, this case is remanded for a new hearing with respect to the examination of the child, Laura; and with respect to the issue of contempt, we reverse the lower court's determination that appellant/mother can be held in contempt of court, based on the existing custody Orders on the record, for failing to "encourage" Laura to visit with appellee. Jurisdiction relinquished.

ROWLEY, J., files a dissenting statement.

ROWLEY, Judge, dissenting:

I dissent from the majority's finding that the trial court's preclusion of cross-examination of the parties' minor child, Laura Sutliff, requires us to vacate the court's order and

remand the case so that appellant may cross-examine Laura.

Based on the trial court's familiarity with the case and the parties, I find that the ruling, if error, is harmless. A party is entitled to a fair hearing, not a perfect one. To constitute reversible error, a ruling on evidence must be not only erroneous, but harmful to the party complaining. *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965). In reviewing a finding of contempt, this Court places great reliance on the sound discretion of the trial court. *Mellott v. Mellott,* 328 Pa.Super. 200, 476 A.2d 961 (1984); *Commonwealth ex rel. Ermel v. Ermel,* 322 Pa.Super. 400, 469 A.2d 682 (1983). In the present case, Judge Sheely has presided over all custody matters between the parties, including: 1) extensive hearings before the original custody order was entered and in response to appellee's first petition for contempt; 2) he has spoken with Laura and allowed her to be cross-examined before amending the original custody order for the second time, and 3) held an extensive hearing on appellee's third petition for contempt during which both parties testified as did appellee's present wife and Laura. *See* slip op. at pp. 1 & 5. Given Judge Sheely's knowledge of the case, we should be especially careful to defer to his ruling.

The majority emphasizes that the lack of cross-examination of Laura prejudices appellant because it is unclear whether appellant encouraged Laura to visit with appellee. Because I do not read Judge Sheely's order and opinion as basing his finding of contempt on appellant's failure to encourage visitation, I cannot agree that the court's ruling merits remanding the case. The order of April 4, 1986 states that the court found as a fact that appellant "let it up to her daughter to decide if she will make any visits with her father." The order for visitation required that appellant have Laura "ready and prepared to make the visits on the times indicated...." By allowing Laura to decide whether she wished to visit with her father, appellant failed to have her "ready and prepared" to visit with her father

and created the impression with Laura that she did not have to obey an order of court which the child was subject to. Appellant thus willfully failed to have Laura "ready and prepared" for the visits and it was this action by appellant that the trial court based its finding of contempt upon. Therefore, appellant's inability to cross-examine Laura on whether she was *"encouraged"* to visit her father would not alter the finding that appellant was in contempt of the trial court's previous order.

Lastly, the order appealed from reveals that the trial court did not *"fine"* appellant for her contemptuous behavior; instead, the court ordered her to pay $250 on account of appellee's counsel fees. The present case is similar to *Mellott v. Mellott, supra,* except for the assessment of counsel fees. In *Mellott,* the trial court acknowledged that the mother was not complying with its order concerning the father's visitation rights with the parties' minor children in the manner that the court intended. However, instead of finding the mother in contempt, the trial court clarified and expanded its order.

For these reasons, I would affirm the trial court's order.