J-A16045-17

2017 PA Super 311

| K.M.G., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| H.M.W., | : | |
| | : | |
| Appellant | : | No. 116 WDA 2017 |

Appeal from the Order December 14, 2016
in the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2011-1215-CD

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

OPINION BY STRASSBURGER, J.:               FILED SEPTEMBER 29, 2017

H.M.W. (Mother) appeals from the December 14, 2016 order finding her to be in contempt of court.  We reverse.

Mother and K.M.G. (Father) are the parents of C.F.G. (Child), born in July 2010.  Father initiated custody proceedings in 2011 and Mother filed a counterclaim for custody thereafter.  In January 2013, the trial court entered an order granting Mother sole legal custody of Child and primary physical custody, subject to periods of supervised custody with Father every other weekend.  As described by the trial court, over the next three years,

> each party filed a litany of petitions for modification of custody as well as emergency petitions for modification of custody, which evidenced the ongoing turmoil between the parties.  Thus, the [trial] court felt it necessary to appoint Courtney L. Kubista, Esq. as Guardian Ad Litem [GAL] on July 10, 2015.  These various filings by the parties first culminated in the [trial court's order] [entered] January 2[5], 2016, wherein the [trial] court ordered that the parties utilize the Child Access Center in Bellefonte,

*Retired Senior Judge assigned to the Superior Court.

Pennsylvania, to facilitate Father's periods of custody with Child. The January 2[5], 2016 order also stated that following one [] month of visits with Father through the Child Access Center, the Child Access Center was to facilitate the transition by Father to unsupervised periods of partial custody, including overnights, with the intent to afford Father periods of partial custody with Child on alternating weekends.

Unfortunately, the January 2[5], 2016 order did not prove effective in resolving the parties' issues regarding the custody arrangement of Child, and Father thereafter filed an additional petition to modify custody as well as an emergency petition to establish right of partial custody. After various proceedings, on April 29, 2016, [the trial] court ultimately ordered that its January 2[5], 2016 order was to be followed by the parties.

On July 12, 2016, Father filed a petition for contempt, wherein he alleged that Mother willfully failed to abide by the [trial] court's orders of January 2[5], 2016[,] and April 29, 2016[,] by failing to have Child meet with Father at the Child Access Center.

Trial Court Opinion, 2/15/2017, at 2-3 (unnecessary capitalization and articles omitted).

The trial court conducted a hearing regarding Father's contempt petition on December 14, 2016. Following the hearing, the trial court entered an order finding Mother to be in contempt for failing to comply with the trial court's January 25, 2016 and April 29, 2016 orders. After stating that "no sanctions shall be imposed at this time," the order continued, stating that

[i]t is the further order of [the trial] court that the parties shall immediately schedule an appointment for family counseling with a mutually agreed upon counselor and shall unconditionally follow the requests and recommendations of said counselor.

> Mother, Father and [Child] shall attend all sessions unless otherwise directed by the counselor.

Order, 12/14/2016, at 1 (unnecessary capitalization omitted).

Mother timely filed an appeal of this order. Both Mother and the trial court complied with Pa.R.A.P. 1925. On appeal, Mother raises two issues.

> 1. Did the trial court abuse its discretion by determining that sufficient evidence was presented to hold [Mother] in contempt of the trial court's orders of January 2[5], 2016[,] and April 29, 2016?

> 2. Did the trial court abuse its discretion by requesting and considering testimony from the [GAL] during the hearing on December 14, 2016, in violation of Pa.R.C.P. 1915.11-2 and 23 Pa.C.S. § 5334?

Mother's Brief at 9 (suggested answers and unnecessary capitalization omitted).[1]

Before we may address Mother's substantive claims, we must determine the appealability of the December 14, 2016 order. "This [C]ourt may examine appealability sua sponte because it affects our jurisdiction over the matter." In re K.K., 957 A.2d 298, 303 (Pa. Super. 2008) (quoting In re Estate of Fritts, 906 A.2d 601, 605 (Pa. Super. 2006)).

To that end, this Court ordered Mother to show cause as to why her appeal should not be quashed, citing Genovese v. Genovese, 550 A.2d 1021 (Pa. Super. 1988), for the proposition that contempt orders are appealable only after imposition of sanctions. Mother complied with the

---

[1] Father and Child's GAL did not submit a brief.

show-cause order, arguing that her appeal should not be quashed. Mother's argument had two components. First, Mother contended that although the trial court stated it was not imposing any sanctions, it did, in fact, impose a sanction when it ordered Mother to engage in family counseling with Father because family counseling was never previously ordered and could only be conducted at financial cost to Mother. Reply of Mother to Show-Cause Order, 2/10/2017, at 1-3. Second, Mother argued that even if ordering her to undergo family therapy did not constitute a sanction, because the contempt order disposed of all pending claims and parties in the custody action, the contempt order falls within the scope of a final order as defined by Pa.R.A.P. 341. Id. at 4. We agree with both of Mother's arguments.

Generally, "[a]n appeal may be taken only from a final order, unless otherwise permitted by rule or statute." Rhoades v. Pryce, 874 A.2d 148, 151-53 (Pa. Super. 2005); Pa.R.A.P. 341(a). "A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination." Stahl v. Redcay, 897 A.2d 478, 485 (Pa. Super. 2006) (quoting In re N.B., 817 A.2d 530, 533 (Pa. Super. 2003) (citing Pa.R.A.P. 341(b)(1)-(3)).

Here, a review of the record reveals that the only matter pending on the docket prior to the entry of the trial court's December 14, 2016 order was Father's petition for contempt. The sole relief requested by Father's

- 4 -

petition was for the trial court to enter an order directing Mother to appear for a hearing to show cause why she was not in contempt of court. Petition for Contempt, 10/23/2016, at 2 (pages unnumbered). The court entered such an order. Order, 10/27/2016, at 1. On December 14, 2016, Mother appeared before the trial court, and a hearing was conducted regarding Father's petition wherein the parties presented testimony and exhibits. Subsequent to the hearing, the trial court entered an order with a direct finding that Mother was in contempt of the court's prior orders. It is clear from the text of the order that no further proceedings or orders regarding the matter were contemplated. Thus, because the trial court's December 14, 2016 order "disposes of all claims and of all parties," it is a final order. Pa.R.A.P. 301(a).

We recognize that the order stated that sanctions were not imposed on Mother, a contention the trial court echoes in its Pa.R.A.P. 1925(b) opinion. Order, 12/14/2016, at 1; Trial Court Opinion, 2/15/2017, at 4. This Court has often stated that "an order of contempt is not appealable if sanctions were not imposed." See, e.g., N.A.M. v. M.P.W., __ A.3d __, 2017 WL 3378878, at *3 (Pa. Super. 2017) (citing Takosky v. Henning, 906 A.2d 1255, 1258 (Pa. Super. 2006) and Genovese v. Genovese, 550 A.2d 1021, 1022–23 (Pa. Super. 1988)). However, we find this line of cases to be distinguishable.

First, assuming arguendo that the order in the instant case did not impose sanctions, the lack of sanctions does not change the fact that the contempt order at issue plainly disposed of all claims and all parties. Although this Court has often repeated the refrain that sanctions must be imposed before an order is final and appealable, an examination of the cases reveals that there is often more nuance to the cases beyond a mere lack of sanctions.

In most of the cases, it is clear that either the order did not make a present finding of contempt, or revealed that the trial court contemplated further proceedings, thereby failing to meet the finality requirement of disposing of all claims and all parties. See Takosky, 906 A.2d at 1255 (holding indirect criminal contempt order was not final because order indicated that sentencing would be held at a future time, and, therefore, punishment phase of matter had not yet been determined); Sargent v. Sargent, 733 A.2d 640, 641 (Pa. Super. 1999) (holding order was not final because "threatened sanction of imprisonment may or may not be imposed in the future depending on whether [a]ppellant pays the past due support"); Kenis v. Perini Corp., 682 A.2d 845, 848 (Pa. Super. 1996) (holding order was not final because order merely stated that court may hold appellant in contempt and impose daily fine in the future if appellant did not hand over file as ordered); Genovese, 550 A.2d at 1022–23 (holding order requiring appellant to pay child support "or be held in contempt" was not final because

it did not impose present finding of contempt or order a sanction); Rulli v. Dunn, 487 A.2d 430, 431 (Pa. Super. 1985) (holding order was not final because it ordered appellant to comply with order within ten days or face sanctions in the future); McManus v. Chubb Grp. of Ins. Companies, 493 A.2d 84, 86 (Pa. Super. 1985) (holding that appellant was "not out of court" until "threatened sanction" in the form of dismissal of action actually was imposed); Guisler v. Alexander, 453 A.2d 4, 4–5 (Pa. Super. 1982) (holding show-cause order was not final because it simply ordered a hearing to determine whether a party should be held in contempt); Brodsky v. Philadelphia Athletic Club, Inc., 419 A.2d 1285, 1286–88 (Pa. Super. 1980) (holding order was not final because chancellor merely threatened to hold party in contempt and issue jail time and fine in future if a decree was not performed); Cedar Valley Civic Ass'n v. Schnabel, 362 A.2d 993, 994 (Pa. Super. 1976) (holding order was not final because term of imprisonment imposed after contempt finding was stayed to permit appellant to post a bond to ensure compliance with court's previous orders).

In other cases, this Court quashed the appeal because the contempt order merely re-ordered a party to do what the party was already obligated to do via a prior order (the hoary writ of "we really mean it"), but neither specifically discussed Rule 341 nor indicated whether the order disposed of all parties and claims. See In re Koll, 457 A.2d 570, 570–71 (Pa. Super. 1983) (quashing contempt order which reissued bench warrant ordering

appellant to appear before a grand jury); Hester v. Bagnato, 437 A.2d 66, 67 (Pa. Super. 1981) (holding order adjudicating appellant in contempt but giving appellant opportunity to purge himself by paying a settlement sum appellant was previously ordered to pay was not a final order). See also Rhoades, 874 A.2d at 153 (stating that "sanctions for contempt cannot simply be a requirement that the contemnor do as directed, i.e., pay arrearages") (interpreting Sonder v. Sonder, 549 A.2d 155 (Pa. Super. 1988) (en banc) (quashing an order, which adjudicated a party in contempt and ordered specific performance of a prior order, due to lack of imposed sanctions, without discussion of Rule 341(a))).

Second, to the extent that our caselaw requires a contemnor to suffer harm or penalty, that standard is met in the instant case. Because no further issues were pending, Mother's inability to appeal the contempt finding means that Mother has no means to purge herself of the contempt or otherwise contest the blot on her escutcheon. Her inability to appeal would also result in Mother being forced to undergo family therapy as ordered without review of the propriety of that decision. Therefore, the contempt order in this case is an appealable final order for purposes of Pa.R.A.P. 301(a).

Alternatively, notwithstanding the trial court's statement that it did not order sanctions, it is clear that the trial court did just that. As a result of the December 14, 2016 order regarding Father's petition for contempt against

Mother, the parties now had to schedule an immediate appointment for family counseling and "unconditionally follow the requests and recommendations" of the counselor, including attending all sessions unless otherwise directed by the counselor. Order, 12/14/2016, at 1-2.

The purpose of a civil contempt proceeding is remedial. Stahl v. Redcay, 897 A.2d 478, 486 (Pa. Super. 2006). This Court has previously observed that "sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order." Rhoades, 874 A.2d at 152 (citation omitted).

Here, none of the court's prior orders required Mother and Father to attend family counseling. Therefore, this is not a situation where the court simply reiterated a prior order after adjudicating a party in contempt. See Rhoades, 874 A.2d at 153 (stating that "sanctions for contempt cannot simply be a requirement that the contemnor do as directed, i.e., pay arrearages"). Although not as direct as a financial penalty, in effect this was a new requirement imposed to compel or coerce Mother to comply with the court's prior order requiring Mother to utilize the Child Access Center for Father's periods of custody. One does not need to look any further than the trial court's opinion to come to this conclusion. The trial court described its findings that Mother failed to encourage Child's visits with Father and that

Mother was unwilling to advocate for any type of relationship between Father and Child. Immediately following this discussion, the trial court stated, "[t]hus, following the December 14, 2016 hearing, the [trial court] found Mother in [c]ontempt, did not impose sanctions, but did order that the parties immediately schedule an appointment for family counseling." Trial Court Opinion, 12/14/2016, at 3-4. Even if the trial court did not intend family counseling to serve as a sanction and ordered family therapy for Child's benefit, because the court ordered Mother in mandatory terms to attend therapy as a response to Father's petition for contempt, the requirement operated as a coercive and remedial sanction in effect.

Having settled the appealability of the order, we may now turn to the merits. Regarding her first issue, Mother argues that Father failed to prove that she violated the trial court's January 25, 2016 order, because the evidence of record indicates that Mother brought Child to visits at the Child Access Center and followed the Child Access Center's directives on when to terminate the visits. Mother's Brief at 31-32. Mother further argues that while the trial court faults her for allegedly not encouraging Child to attend visits at the Child Access Center, the January 25, 2016 order did not provide Mother notice that encouragement was required. Id. at 33.

Our review of contempt orders is limited to determining whether the trial court abused its discretion. Bold v. Bold, 939 A.2d 892, 895 (Pa.

Super. 2007).   We have described judicial discretion regarding contempt

orders as follows.

> Judicial discretion requires action in conformity with law on facts
> and circumstances before the trial court after hearing and
> consideration. Consequently, the court abuses its discretion if, in
> resolving the issue for decision, it misapplies the law or exercises
> its discretion in a manner lacking reason. Similarly, the trial
> court abuses its discretion if it does not follow legal procedure.

Id. (citation omitted).

The trial court offered the following analysis regarding its

determination that Mother violated the January 25, 2016 order by her own

volition.

> [I]t appeared to the court that Mother indeed failed to facilitate
> Father's periods of custody via the Child Access Center by her
> own volition, especially in light of Mother's past behaviors.   ...
> [I]t was established during the December 14, 2016 hearing that
> Mother would drive Child to the Child Access Center, but upon
> Child's refusal to participate, Mother would simply leave the
> facility.   [N.T., 12/14/2016, at 31-34]   Given Child's age, that
> being five [] to six [] years old, it would seem that with the
> appropriate encouragement from Mother, the court[-]ordered
> meetings could have taken place, and Father would have gotten
> to enjoy his periods of custody through the Child Access Center.
> However, this was never the case.   Especially in light of Mother's
> earlier pattern of denying Father's requests to communicate with
> Child, the court believes that Mother's refusal to facilitate
> meetings between Father and Child was indeed volitional.

Trial Court Opinion, 2/15/2017, at 5 (unnecessary articles and capitalization

omitted).

We discern two problems with the trial court's analysis.   Although we

must afford the trial court great deference as the fact-finder, to withstand

- 11 -

appellate review, the trial court's factual findings must have support in the record. N.H.M. v. P.O.T., 947 A.2d 1268, 1272 (Pa. Super. 2008). The trial court's finding that Mother failed to encourage Child to visit Father or make efforts to facilitate their interaction simply has no support in the record, as the following questioning of Mother on direct examination demonstrates.

Q[:] Can you tell the [c]ourt what happened whenever you appeared at the Child Access Center following the initial entry of the order of January 2[5th], 2016? Did you take [Child] to the Child Access Center?

A[:] Yes. We went all three, four times, I believe it was. The first time we went, [Child] refused to get out of the car. He was refusing from the minute that we left the house. I encouraged him, I supported him, and I helped him to get there. We were in the driveway. [The director of the Child Access Center] came out. [Child] refused to get out of the car. He was very upset. He was picking his fingers until they bled, and he was pulling his hair, and he kicked the whole back of the car – the back of the seat of the car the entire hour-and-a-half drive. And [the director] and I were discussing it. She wanted to send us away. I was the one [who] said let's try and give him a little bit of time. We waited about 20 minutes. [Child] refused to get out. [The director] said, I'm not physically allowed to put my hands on him to take him out of the car. She said, Do you want to reschedule? I said, Yes. We came back the next three times. [Child] went into the building with me all three times.

Q[:] So there were actually four visits scheduled following the first order?

A[:] Yes.

Q[:] And ... the second, third and fourth visits [Child] went into the building?

A[:]  We went to all of the visits, into the building for all of the visits, except for the first one. …

Q[:]  Following the fourth visit, did you terminate the services at the Child Access Center?

A[:]  No.  The Access Center director determined that it was not appropriate for [Child] to be in that situation.  And I waited to be dismissed all of the times that I was there.  We were there from 20 to 25 minutes every single time in the building.

Q[:]  When you were there at the Child Access Center, did you follow written and verbal protocol and directions given to you by the Child Access Center?

A[:]  Yes.

* * *

Q[:]  … Once [the trial court] … reinstate[d] the January 2[5], 2016 order directing you to go back to the Child Access Center, what did you do?

A[:]  I contacted the director, Jamie Jones.  We scheduled three appointments.  They were weekly; June 4th, 11th, and 18th.

Q[:]  Of 2016?

A[:]  Yes.  And we went in each time; and, again, we were there 20, 25 minutes each time.  The Access workers actually stopped trying to encourage [Child], and I was the one [who] – basically, I was doing therapy with [Child] to try to get him to go to the door.  I even took his hand and brought him inside the building to the door that [Father] was in in a small waiting room, and [Child] pulled away and ran to the exit and refused to have any more interaction.  The workers determined that it was not appropriate or healthy for [Child] to be in that situation.  I waited to be dismissed all three times, and left.

* * *

Q[:]  On [June 11, 18 and 21, 2016], did [Child refuse to see [F]ather?

A[:]   He did.

Q[:]   And, on June 21, 2016, did you receive a letter from [the director] indicating that the Child Access Center was terminating the visits effective immediately?

A[:]   Yes.

N.T., 12/14/2016, at 31-34.  This testimony by Mother, despite being relied upon by the trial court, fails to support the trial court's factual finding that Mother failed to encourage Child to visit Father or make efforts to facilitate their interaction.  Nor does anything else in the record lend support.  Neither Father's attorney nor the GAL cross-examined Mother, and the parties did not call a representative from the Child Access Center to testify.  Father did not observe whether Mother encouraged Child, as Father acknowledged that he did not have contact with Child, and Father admitted that the director of the Child Access Center informed him that Child "would not come in" to see him.  Id. at 6, 8, 10.

Moreover, even assuming arguendo that Mother did not encourage Child to visit Father, the trial court still erred by finding Mother in contempt of court.  This Court has emphasized that

> the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt. The order or decree which the contemnor has been held to have violated, must be definite, clear, and specific - leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Moreover, the contemnor must have had notice of the order [s]he disobeyed, the act constituting her violation must be volitional[,] and she must have acted with wrongful intent.

> Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the [contemnor].

Id. (citation and quotation marks omitted).

Mother relies upon Sutliff v. Sutliff, 522 A.2d 80, 83–84 (Pa. Super. 1987), wherein this Court determined that because none of the custody orders explicitly required that the appellant encourage her child, the appellant could not be held in contempt for failing to encourage her child to visit with her father. In Sutliff,

> [t]he original custody [o]rder ... mandated that appellant "shall have the children ready and prepared to make the visits on the times indicated" in the Order. But a requirement of "ready and prepared" is far different from a requirement of "encourage", which appellant was found in contempt for failing to do. We understand the lower court's belief that visitation must be forced in this case less future efforts by appellee to visit and develop a relationship with [his child] be thwarted, ... but we cannot ignore the basic elements to support a finding of contempt. Thus, based on the existing custody orders on record in this case, we hold that appellant/mother cannot be held in contempt for failing to encourage [the child] to visit with her father.

Sutliff, 522 A.2d at 83-84.

In the instant case, the underlying order at issue[2] states "the parties shall utilize the Child Access Center in Bellefonte, Pennsylvania, to facilitate Father's periods of custody with [Child]." Order, 1/25/2016, at 1 (emphasis

---

[2] The trial court found Mother to be in contempt of the April 29, 2016 order as well. However, the April 29, 2016 order merely reinstated the January 22, 2016 order and ordered the parties to "unconditionally comply" with the January 22, 2016 order. Order, 4/29/2016, at 1.

- 15 -

added). The trial court faults Mother for refusing to facilitate Father's periods of custody because she did not encourage Child to visit. But neither the January 25, 2016 order nor any of the other custody orders in this case "specifically or clearly state[s] that [A]ppellant must 'encourage' [Child] to visit." Sutliff, 522 A.2d at 83–84. Further, the order required Mother to utilize the Child Access Center. The use of the Child Access Center, would, in turn, facilitate Father's periods of custody. If the trial court intended for Mother to encourage Child to visit Father or to go above and beyond following the instructions of the Child Access Center, it should have ordered Mother specifically to do so.

Based on the foregoing, the trial court erred in holding Mother in contempt of the order. Therefore, we reverse the December 14, 2016 order holding Mother in contempt.[3]

Order reversed and vacated. Jurisdiction relinquished.

Judge Stabile joins.

PJE Ford Elliott files a dissenting opinion.

---

[3] Mother's second issue questions whether the trial court abused its discretion by allowing Child's GAL to testify without being subject to cross-examination and without submitting a report twenty days prior to the hearing in contravention of Pa.R.C.P. 1915.11(c). Based on our resolution of Mother's first issue, we need not address her second issue. Even if we addressed the second issue, we would find it to be waived, as Mother did not make a contemporaneous objection to the GAL's testifying during the hearing or request to cross-examine the GAL. See N.T., 12/14/2016, at 49-50. See also Pa.R.E. 103(a); Commonwealth. v. Thoeun Tha, 64 A.3d 704, 713 (Pa. Super. 2013).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/29/2017