J-S57007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.Y. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.S. AND B.P. | : | No. 964 MDA 2019 |

Appeal from the Order Entered May 14, 2019
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s):  07-FC-41243

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 24, 2020**

A.Y., the paternal grandmother ("Grandmother"), appeals from the May 13, 2019 order denying her petition for contempt in the underlying custody litigation concerning her then-thirteen-year-old grandson, E.P.  We affirm.[1]

_____

[1] The trial court entered two orders on the above-referenced date.  The first order denied Grandmother's motion for contempt.  The second order included several administrative directives, scheduled one visit between Grandmother and E.P., instructed the guardian *ad litem* to arrange future visits at her discretion, and scheduled a review hearing for June 26, 2019.  While the notice of appeal in the certified record does not indicate which of the two orders Grandmother sought to appeal, only the order denying the petition for contempt of an existing order is final.  ***See Schultz v. Schultz***, 70 A.3d 826, 828 (Pa.Super. 2013).  The second order is interlocutory insofar as it contemplated further proceedings on June 26, 2019.  ***See Kassam v. Kassam***, 811 A.2d 1023 (Pa.Super. 2003) (custody order that provided for

During 2005, E.P. was born of the high school romance between T.S. ("Mother") and B.P. ("Father"). The couple never married. E.P., Mother, and Father resided in Grandmother's home when the child was an infant, and Grandmother continued to exercise periods of partial physical custody throughout the first ten years of the child's life. In October 2007, the parties agreed to a custody order wherein Mother and Father shared physical custody and allotted Grandmother "ample" partial physical custody "which [was] to be worked out among the parties." *See* Order, 10/3/07.

During October 2017, Grandmother filed a custody complaint that culminated with an October 16, 2018 order that awarded Grandmother three hours of partial physical custody every Tuesday evening, seven hours of daytime custody on alternating Sundays, and overnight custody between Friday and Saturday on one of the remaining non-custodial weekends. *See* Order, 10/16/18 at 1-2. In addition, the order directed Father to engage in therapy with E.P. and advised the guardian *ad* litem of the name of therapist and the time of the scheduled sessions. *Id*. at 2.

Grandmother's last physical contact with E.P. occurred on October 9, 2018, one week prior to the entry of the pertinent custody order. N.T., 5/10/19, at 7. On multiple occasions after that date, Grandmother attempted to exercise physical custody pursuant to the newly-entered custody order;

_____

further review in nine months is interlocutory because it was not meant as final resolution of the custody matter). Accordingly, we address the merits only of Grandmother's appeal relating to the order denying the petition for contempt.

- 2 -

however, twelve-year-old E.P. either refused to accompany Grandmother or berated her when she arrived at the custody exchange. *Id*. at 10-11. Ultimately, prior to the visit scheduled for November 19, 2018, E.P. contacted Grandmother by text and advised her, "Don't bother coming [to pick me] up." *Id*. at 11. Grandmother subsequently testified that E.P.'s change of tone concerned her because she could not point to any event that precipitated the *volte-face* and the child never expressed any reason for the rejection. *Id*. at 12.

In December 2018, Grandmother filed a petition for contempt of the approximately two-month-old custody order. She alleged, *inter alia*, that Mother failed to abide by the custody order by refusing to permit Grandmother to exercise partial physical custody and in neglecting to schedule the required therapy sessions. On January 18, 2019, the trial court continued the contempt proceedings and directed that the petition be heard in conjunction with a previously scheduled custody conciliation conference before a custody master. Four days later, the trial court entered an order that adopted the custody master's recommendation to temporarily suspend Grandmother's partial custody, held the contempt petition in abeyance, and directed E.P. to continue therapy, including addressing his reluctance to visit Grandmother. Thereafter, the trial court continued the consolidated custody and contempt hearing until May 10, 2019.

Mother, Father, and Grandmother testified during the ensuing contempt/custody evidentiary hearing, and the trial court conducted an *in camera* interview with E.P. and the guardian *ad litem* at the close of the evidence. The court explained, "I think at this time we'll close the proceeding as to the contempt, but since [E.P.] is here, [guardian *ad litem*], I would like to go back into chambers and have a discussion with [E.P.] with you on the phone." N.T., 5/10/19, at 101. None of the parties objected to the *in camera* exchange or mentioned the fact that counsel's exclusion from the discussion was contrary to Pa.R.C.P. 1915.11(b) ("The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties."). As it relates to the latter point, the trial court responded to the inquiry by counsel for Grandmother whether the attorneys would be present during the interview by stating, "I don't want to put undue pressure on [E.P.], make him feel uncomfortable." *Id*. 105. Counsel did not invoke Rule 1915.11(b), demand to participate, or object to the court's decision. Instead, counsel ceded, "That's okay," and the trial court continued, "Aside from the contempt issue, we are all here for what's in the interest of [E.P.] not what's in the best interest of [Mother] or [Grandmother] or [Father]. My concern is what's in [E.P.'s] best interest." *Id*.

In this vein, the trial court later revealed that during the interview, E.P. "indicated to [it] and the [g]uardian ad [l]item that he would only be amenable to supervised visits with Grandmother so that they may begin the process of

reunification." Trial Court Opinion, 7/20/19, at 6-7. The guardian *ad litem* also supported reunification, but she cautioned against an immediate return to the prior custody arrangement. She explained, "I just think that there needs to be contact sooner rather than later, [but] it needs to be at a slower pace. So, to dump, essentially, you know, have them spend a weekend together would be a little bit too much too fast." N.T., 5/10/19, at 34.

On May 14, 2019, the trial court entered the above-referenced order denying the petition for contempt because Grandmother "failed to establish that there was willful disobedience of the Court's October 10, 2018 Order." Trial Court Order, 5/14/19 (citation and internal quotation marks omitted). On the same date, the court entered a concomitant order that (1) scheduled a visitation between Grandmother and E.P.; (2) afforded the guardian *ad litem* discretion to schedule additional periods of partial custody; (3) directed E.P. to continue with counseling; and (4) scheduled a custody review hearing for the following month. This appeal followed.

Pursuant to Pa.R.A.P. 1925(b), Grandmother filed a concise statement of errors complained of on appeal raising sixteen issues, which the trial court addressed in its Rule 1925(a) opinion along with a review of the statutory best interest factors enumerated in § 5328(a) of the Child Custody Law.

Grandmother presents the following issues for our review:

> 1. Did the trial court err as a matter of law or otherwise abuse its discretion in denying [Grandmother's] Petition for Contempt given that the trial court conducted an in camera interview of the minor child and failed to transcribe or keep a record of the interview?

2. Did the trial court err as a matter of law or otherwise abuse its discretion in denying [Grandmother's] Petition for Contempt given that [Grandmother] established by a [p]reponderance of the evidence that Respondents willfully violated the October 10, 2018 Order of Court?

3. Did the trial court err or otherwise abuse its discretion by improperly using the contempt proceeding to modify custody?

Grandmother's brief at 6.

While all three of the issues that Grandmother presents on appeal are subsumed by the sixteen issues asserted in her Rule 1925(b) statement, the first issue she asserts is waived pursuant to Pa.R.A.P. 302 because Grandmother did not level a contemporaneous objection to the manner of the *in camera* exchange during the custody hearing. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, although Grandmother raised this assertion in her twenty-six-page motion for reconsideration, without a predicate contemporaneous objection to the court's proposed handling of the interview, there was no ruling for the trial court to reconsider after the fact. Indeed, this is not a situation where Grandmother objected to the manner of the *in camera* hearing and then subsequently presented novel arguments in support of the objection in her petition for reconsideration. To the contrary, Grandmother acquiesced to the trial court's decision to conduct an *in camera* hearing without the presence of counsel and neglected to demand that the discussion

be placed on the record. Accordingly, these issues are waived. **See Schwarcz v. Schwarcz**, 548 A.2d 556 (Pa.Super. 1988).

Grandmother's second issue challenges the trial court's denial of her petition for contempt. We review civil contempt orders pursuant to an abuse of discretion standard. **K.M.G. v. H.M.W.**, 171 A.3d 839, 844 (Pa.Super. 2017). A trial court abuses its discretion "if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure." **Id**. at 844-45 (quoting **Bold v. Bold**, 939 A.2d 892, 895 (Pa.Super. 2007)).

Grandmother asserts that Mother violated the October 16, 2018 custody order by refusing her physical custody, failing to encourage E.P.'s relationship with Grandmother, and disregarding E.P.'s counseling sessions with Father. As it relates to the first two allegations, Grandmother's argument relies upon an unpublished memorandum that this Court filed prior to May 1, 2019, and **Luminella v. Marcocci**, 814 A.2d 711 (Pa.Super. 2002), two cases that involved one parent's interference with the custody rights of another parent.[2]

---

[2] Grandmother's citation to an unpublished Superior Court memorandum violates Superior Court Internal Operating Procedure 65.37, which prohibits citation to unpublished memorandum decisions filed prior to May 1, 2019. While Pa.R.A.P. 126(b), permits persuasive citation to unpublished non-precedential memorandum decisions filed after May 1, 2019, the case Grandmother references does not satisfy that requirement. Thus, we do not consider it.

The crux of Grandmother's contention is that Mother's statement that she was "not going to force [her] son to [visit Grandmother]" evidenced her "contumacious conduct" and interference with Grandmother's custody rights. **See** Grandmother's brief at 28-29. She also challenges the trial court's reliance upon what she characterizes as Mother's "self-serving and unsubstantiated" testimony that Mother actively supported E.P.'s relationship with Grandmother notwithstanding her acceptance of the child's decision to avoid interaction. **Id**. at 37. Essentially, Grandmother contends that, having agreed to the custody arrangement outlined in the October 2018 custody order, Mother "made [a] unilateral decision, the very next week, to disregard it." **Id**. at 31.

Our child custody statute provides that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S. § 5323(g)(1). In order to support a finding of civil contempt, the petitioning party must prove by a preponderance of the evidence "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Coffman v. Kline**, 167 A.3d 772, 780 (Pa.Super. 2017). This case implicates the latter two components of the test.

In rejecting Grandmother's contentions, the trial court reasoned that Mother was not in flagrant disobedience of the order simply because she gave

her thirteen-year-old son emotional support in relation to his decision to forgo the scheduled interactions with Grandmother. The trial court accurately highlighted that Mother not only supported Grandmother's exercise of physical custody, but she also consistently encouraged E.P. to nurture his relationship with Grandmother. *See* Trial Court Opinion, 7/20/19, at 19-20 (citing N.T., 5/10/19, at 55-57). The court also highlighted that Mother offered to open her home to Grandmother's visitation if it would help facilitate E.P.'s cooperation. *Id*. at 20 (citing N.T., 5/10/19, at 55-59). Hence, it concluded, "[Mother] has not tried to intentionally or willfully violate the [c]ourt's order." *Id*.

As the certified record supports the trial court's factual findings and the legal conclusions drawn from those facts are not erroneous, we do not disturb the court's determination that Grandmother failed to prove that Mother acted with wrongful intent. Grandmother's primary contention asserted that Mother's testimony concerning her support of E.P.'s relationship Grandmother was self-serving and unsubstantiated. This position ignores both the trial court's role as the ultimate arbiter of fact in child custody cases generally and our standard of review of an order denying the petition for contempt. *See R.S. v. T.T.* 113 A.3d 1254, 1257 (Pa.Super. 2015) (appellate court may not find facts or reweigh evidence); and *K.M.G.*, *supra* at 844 (we review civil contempt orders for abuse of discretion, *i.e.*, misapplication of law, lack of legal reason, or does not following legal procedure).

Furthermore, as it relates to Grandmother's fixation with Mother's statement that she would not force E.P. to yield to Grandmother's partial physical custody, it is clear from the certified record that Mother simply provided her son emotional support. Indeed, in contrast to what Grandmother characterized as Mother's unilateral decision to interfere with Grandmother's custodial rights, Mother encouraged that relationship, and even in recognizing E.P.'s reluctance to participate in the custody exchanges, Mother insisted that E.P. confront Grandmother directly about his feelings. Accordingly, the certified record simply does not bear out Grandmother's depiction of Mother as the tyrannical interloper who is staunchly opposed to Grandmother's relationship with E.P. To the extent that Mother violated the custody order by supporting her thirteen–year-old son in his hesitation to interact with Grandmother, the certified record will not sustain Grandmother's allegations of malevolence. Hence, we do not disturb the court's conclusion that Grandmother failed to prove by a preponderance of the evidence that Mother's behavior was driven by wrongful intent.

The second aspect of Grandmother's argument concerns the counseling component of the October 2018 custody order. Grandmother assails Mother's role in providing the guardian *ad litem* inaccurate information about E.P.'s attendance at the court-ordered counseling sessions with Father. Specifically, Grandmother asserts that, for eight months Mother and Father misled the guardian *ad litem* about the fact that E.P. and Father had not attended

sessions since April 2018. During the evidentiary hearing, the guardian *ad litem* summarized the situation as, "I do think that things were done inappropriately which would have put us in a better position today had they been followed." N.T., 5/10/19, at 35.

In denying the contempt petition, the trial court acknowledged Mother's role in the dispute regarding the frequency of E.P.'s counseling, but also observed that Mother consistently supported the counseling regimen and complied with the guardian *ad litem*'s efforts to resume therapy sessions. As evidenced by the testimony of the guardian *ad litem* that Mother has "historically" agreed to counseling and addressed various insurance issues to facilitate the sessions, the certified record support the court's findings. ***Id***. at 37 ("[Y]es, mom has been on board with counseling[.]"). Specifically, as it relates to the insurance issues, the guardian *ad litem* confirmed, "it did come to my attention that there was an issue, . . . that [the therapist] didn't want to engage in court ordered treatment". ***Id***. at 40-41. Accordingly, notwithstanding the above-referenced evidence that Mother's lack of candor with the guardian *ad litem* contributed to the counseling delay, we do not disturb the court's finding that Mother's behavior was not tantamount to "willful disobedience." Trial Court Opinion, 7/20/19, at 25.

Grandmother's final issue is that the trial court erred in modifying custody as a result of Grandmother's custody petition. The crux of her complaint is that the trial court violated her due process by suspending her

- 11 -

custody rights under the October 2018 order when she did not have notice that custody would be at issue. Her assertion fails for several reasons. Preliminarily, the certified record belies Grandmother's underlying contention that the May 14, 2019 order denying contempt also altered the custody arrangement. In actuality, the final order on appeal does not address physical custody at all. It simply denied Grandmother's petition for contempt.

Moreover, to the extent that we could review the concomitantly entered interlocutory order that directed the guardian *ad litem* to schedule an initial visitation between Maternal Grandmother and E.P., and then schedule future visitation at her discretion, Grandmother's assertions fail. First, Grandmother's underlying premise, that the October 2018 order suspended her custody rights, is flawed. In reality, the trial court altered Grandmother's custody rights in its order entered on January 24, 2019, which suspended Grandmother's partial physical custody pending the custody review conference, which was held in conjunction with contempt hearing. Then, having considered the evidence adduced during the ensuing hearing, including E.P.'s preference for supervised visitation and the guardian *ad litem*'s suggestion that the reunification occur in phases, the court entered an interim order that satisfied both conditions pending review one month later. As the record supports the trial court's determination, it is unassailable.

Finally, we observe that Grandmother's due process argument, which asserts a lack of notice that contempt would be at issue during the hearing,

fails. Grandmother's argument is based upon our holding in *J.M. v. K.W.*, 164 A.3d 1260, 1268 (Pa.Super. 2017), where we concluded that the trial court erred in transferring physical custody as a sanction for contempt because the court neglected to provide notice that custody was at issue.[3] We reasoned, "a trial court may transfer physical custody at the conclusion of a contempt hearing only when the modification suits the child's best interest in light of the statutory factors and the respondent has been given particular notice of that objective." *Id*.

Unlike the circumstances in *J.M.*, *supra*, or the case law that we discussed therein, the trial court did not alter Grandmother's custody rights as a sanction for contempt. Indeed, Grandmother was the petitioning party

---

[3] The Child Custody Law outlines the sanctions for contempt as follows:

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S. § 5323(g).

in the contempt proceeding and the court denied that petition. More importantly, in contrast to the appellants in *J.M.* and the related cases, Grandmother did, in fact, have actual notice that custody would be addressed during the contempt proceedings because the petition was heard in conjunction with a custody conciliation conference. Indeed, the scheduling order for that contempt hearing provided in relevant part:

> AND Now, this 18th day of January, 2019, upon consideration of [Grandmother's] Petition for Civil Complaint, and the agreement of the parties, it is Hereby Ordered and Decreed as follows:
>
> 1. This matter will be held in abeyance until January 22, 2019, and **will be heard in conjunction with the conciliation conference**.
>
> 2. **The Custody Master may make a recommendation at the conciliation conference in regards to Contempt**.

Trial Court Order, 1/18/19 (emphases added, some emphasis omitted). As Grandmother received notice that the contempt petition would be addressed during the custody conciliation conference, she was particularly aware that her custody rights would be at issue during that proceeding. Hence, her attempt to invoke the due process arguments that we outlined in *J.M.*, is unavailing.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/24/2020</u>